# STATE OF VERMONT

## ENVIRONMENTAL COURT

Appeal of Pilgrim Partnership, LLC}     Docket No. 49-3-03 Vtec
}
}
}
}

### Decision and Order on Threshold Issue

Appellant Pilgrim Partnership, LLC, appealed from a decision of the Development Review Board (DRB) of the Town of Moretown denying conditional use approval for its proposed project. Appellant is represented by David R. Bookchin, Esq.; the Town of Moretown is represented by Paul S. Gillies, Esq., and is not taking an active role in these proceedings; Interested Person Joseph Bahr is represented by Charles F. Storrow, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, on the preliminary issue of whether the proposed project falls into one or more allowable use categories under the Moretown Zoning Regulations. If it does, the hearing on the merits of the application is now scheduled for Friday, July 18, 2003, with the site visit and hearing of the testimony of any witnesses unavailable for the 18th to be held on Monday, July 14, 2003 beginning at 9 a.m. at the Washington Probate Court in Montpelier. If the proposed project does not fall into one of the enumerated allowable use categories, then the hearing on July 14, 2003, will also address any evidence necessary to determine whether the proposed project may be considered under ' 2.3(E) allowing uses not specifically listed to be considered for approval by the DRB, and hence this Court. The Court held a brief evidentiary hearing on May 23, 2003 and the parties submitted written memoranda on this preliminary issue. Upon consideration of the evidence and the written memoranda, the Court finds and concludes as follows on the preliminary issue only.

Appellant=s property is a 7.25-acre parcel of land with frontage on Route 2, Route 100, and Cobb Hill Road, in the Commercial zoning district of the Town of Moretown. Appellant proposes to create three areas under condominium ownership, and to develop condominium areas A and B, consisting of approximately four acres, to be used by S.T. Paving, Inc., d/b/a Vermont Tennis Courts.

Appellant proposes to construct a 7,200-square-foot building (60' x 120') to be used for a business office, indoor storage of inventory and materials used in the business, and indoor maintenance of registered and unregistered vehicles and construction equipment used in the business. In addition, Appellant proposes outdoor areas for employee parking, equipment storage, and materials storage.

The paving season runs from early May through mid-November; the tennis court construction season runs from mid-April (for the earliest jobs generally out-of-state in warmer areas) to October, but with the work force reduced by half in mid-July. In season, twenty-one people are on the payroll, but only three work on site. The remainder either go directly to the job site or come in to the office for 15 to 30 minutes at the beginning and the end of the work day to leave their personal vehicles and pick up the vehicles, equipment and materials needed for the job. The vehicles and motorized equipment currently owned and used by S.T. Paving are the following: three 1999 Volvo tri-axle dump trucks; one 2000 Freight-line tractor; one lowboy trailer; one 25-ton flatbed trailer; two pavers; four rollers; two graders; one small backhoe/loader; three pickup trucks; two rack trucks; and one shoulder widener.

To be considered for approval, each of the proposed uses for the property and the building must fall within one of the use categories allowed in the district (in Table 2.2 of ' 2.4), or else must undergo approval under ' 2.3(E). That is, as a A mixed-use@ under ' 3.9, each of the proposed uses must otherwise be allowed as a permitted or a conditional use in the district. For any of the uses that do not fall within a listed use category, it will be necessary to determine at the hearing now provisionally scheduled for July 14, 2003, whether they can be considered for approval under ' 2.3(E). Therefore, the initial task is to determine the appropriate use category for each of the proposed uses. Not all the use categories in the regulations are defined in the definitions section.

The business office proposed use falls within the A Professional/Business Office@ conditional use category. (Table 2.2(3)(21)).

The indoor storage of inventory, materials and tools used in the business fall within the A Enclosed Storage and Warehousing@ conditional use category. (Table 2.2(3)(10)). Nothing in the definitions precludes the warehousing or storage of materials and inventory used in a business that involves installation on a customer= s site as opposed to the shipping out of a finished product. For example, a lumberyard or a landscape business or a kitchen cabinet business may have a warehouse in which materials and tools used in the business are stored.

The outdoor storage of materials used in the business, including aggregate, stone, topsoil, and inert[1] pieces of hardened asphalt suitable for recycling would be subject to approval within the AAccessory Use@ conditional use category (Table 2.2(3)(2)), if it can be shown to be accessory to one or more of the uses on the property capable of being approved as a conditional use either by being so listed in Table 2.2(3) or by qualifying for consideration under ' 2.3(E).

In Article VII the Zoning Regulations define the term A motor vehicles@ to include A all motor vehicles capable of being registered for legal operation o[n] Vermont highways.@ The term specifically excludes all-terrain vehicles, boats (and their trailers), snow-machines, and A construction and excavation equipment.@ Reading the definition as a whole, we conclude that vehicles used in the construction and excavation trades, but capable of being registered to travel on Vermont highways (such as dump trucks) fall within the definition of A motor vehicles,@ while motorized equipment not capable of being registered (such as backhoes), which must be transported from job site to job site on a trailer, does not fall within the term A motor vehicles.@

The Zoning Regulations define the term A gasoline station@ to include A any premise[s] where . . . vehicular maintenance activities are conducted.@ The definition does not distinguish between premises at which such activities are conducted for public customers, and premises at which such activities are conducted as an accessory use to a business, nor does it distinguish between passenger automobiles and other types of motor vehicles. > Gasoline Station= is a use category allowed as a conditional use in the Commercial zoning district.

The Zoning Regulations define the term A automobile sales and service@ as A land or structures used for either or both the sale of new or used vehicles and the maintenance, servicing and repairing of vehicles.@ The Zoning Regulations do not contain a separate use category explicitly addressing the sales or service of other types of motor vehicles, such as trucks, and Appellant argues that this category refers only to the sales and service of passenger automobiles. Because the term A motor vehicles@ is defined and is used elsewhere in the Zoning Regulations, we must conclude that the drafters of the ordinance used the word > automobile,= in this section to distinguish it from, for example, the sales and service of other categories of motor vehicles, such as dump trucks or motorcycles, and also to distinguish it from the sales and service of other motorized equipment, such as farm machinery, all-terrain vehicles, or boats. > Automobile Sales and Service= is a use category allowed as a conditional use in the Commercial zoning district.

Based on these definitions, both the indoor maintenance of registered vehicles (and those capable of being registered), used in the business, and the indoor maintenance of construction equipment used in the business, would be use categories that would have to qualify for consideration under ' 2.3(E), before they could be considered under the criteria for conditional use approval. In this respect, for the hearing on July 14, 2003, the parties may wish to consider evidence related to the use category covering municipal garages, fire stations and equipment sheds (Table 2.2(3)(22)), as well as the motor vehicle related categories discussed above.

The outdoor parking of registered vehicles (and those capable of being registered), used in the business, including employees= passenger vehicles, would be subject to approval within the A Accessory Use@ conditional use category (Table 2.2(3)(2)), if it can be shown to be accessory to one or more of the uses on the property capable of being approved as a conditional use either by being so listed in Table 2.2(3) or by qualifying for consideration under ' 2.3(E). And see the > storage of motor vehicles= requirements of ' 4.14 and the > parking and loading= requirements of ' 4.9.

Similarly, outdoor parking of construction equipment used in the business would be subject to approval within the AAccessory Use@ conditional use category (Table 2.2(3)(2)), if it can be shown to be accessory to one or more of the uses on the property capable of being approved as a conditional use either by being so listed in Table 2.2(3) or by qualifying for consideration under ' 2.3(E). And see the > storage of motor vehicles= requirements of ' 4.14 and the > parking and loading= requirements of ' 4.9.

The remaining function described for the property was the outdoor spreading of soft asphalt remaining in a truck at the end of the work day, onto an area of the ground approximately ten feet square, to allow it to harden so that it may be broken up into pieces of hardened asphalt suitable for transportation to an asphalt plant for recycling. This use of the property does not fall within any of the allowed permitted or conditional use categories, and would have to qualify under ' 2.3(E) to be considered for the property. In presenting evidence on this use category at the hearing on July 14, 2003, the parties should consider the performance standards of ' 4.10 (and in particular ' 4.10(B)(4)), as well as the criteria of ' 2.3(E).

Accordingly, as discussed above, certain elements of the project must first qualify under ' 2.3(E) before they can be considered for approval under the conditional use criteria, while other elements of the project fall within the listed conditional uses for the district. As already scheduled[2] by agreement at the telephone conference on May 30, 2003, we will take evidence on July 14, 2003, on all of the evidence necessary for the Court to determine whether those elements of the project qualify under ' 2.3(E) for consideration as conditional uses, together with the evidence of any witness unavailable for the hearing on July 18, 2003. The hearing on July 14, 2003 is scheduled to begin at 9 a.m. at the Washington Probate Court on Elm Street (behind the Superior Courthouse) and to continue as needed until another hearing now scheduled for 2:30 p.m. (Please note that that other hearing may be cancelled, in which case the entire day would be available for this case and its site visit. Please telephone the Court staff on or about July 10, 2003 for this information). We will also take the site visit on July 14, 2003, either at the close of the hearing or after the work day, depending upon that other hearing. None of the evidence taken on July 14, 2003, need be repeated at the hearing on July 18, 2003, for it to be considered on the merits of the application.

Dated at Barre, Vermont, this 7th day of July, 2003.

_____
Merideth Wright
Environmental Judge

---

## Footnotes

[1.] That is, no longer off-gassing hot asphalt fumes.

[2.] We apologize for any confusion created by the fact that a hearing notice was sent on June 17, 2003, for the July 18, 2003 hearing, but not for the July 14, 2003 hearing.